IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| BARTHOLOMEW GRANGER, #999579, | § § § | |
| *Petitioner,* | § § | |
| v. | § § | CIVIL ACTION NO. 1:17-cv-291 |
| DIRECTOR, TDCJ-CID, | § § § | |
| *Respondent.* | § | |

## ORDER

Pending before the court is Petitioner Bartholomew Granger's Motion to Stay and Hold in Abeyance the Federal Habeas Proceeding (Dkt. #22). He desires to return to State court to exhaust new claims in accordance with *Rhines v. Weber*, 544 U.S. 269 (2005). The Director opposes the motion. For reasons hereinafter explained, the Court finds that the motion has merit and should be granted.

## Procedural Background

Mr. Granger is challenging his capital murder conviction and death sentence imposed by the 58th District Court of Jefferson County, Texas, in Cause Number 13-16388, *The State of Texas v. Bartholomew Granger*. The Texas Court of Criminal Appeals affirmed the conviction and death sentence. *Granger v. State*, No. AP-77,017, 2015 WL 1875907 (Tex. Crim. App. April 22, 2015). Mr. Granger filed an application for a writ of habeas corpus in State court, which was denied by the Texas Court of Criminal Appeals. *Ex parte Granger*, No. WR-83,135-01, 2017 WL 3379285 (Tex. Crim. App. May 17, 2017). The United States Supreme Court denied his petition for a writ of certiorari. *Granger v. Texas*, ___ U.S. ___, 138 S. Ct. 470 (2017).

1

Mr. Granger initiated the present proceedings on July 7, 2017. He filed a petition for a writ of habeas corpus (Dkt. #11) on May 11, 2018. He filed an amended petition (Dkt. #20) on December 17, 2018. The amended petition contains twenty grounds for relief, including twelve claims that were not presented to the Texas Court of Criminal Appeals. Because of the length and breadth of Mr. Granger's petition, the Director filed an extension of time (Dkt. #31) requesting an extension of ninety-days to respond to the amended petition on August 26, 2019.

The present motion (Dkt. #22) was filed on February 13, 2019. Mr. Granger desires to return to state court to exhaust the claims that were not presented to the Texas Court of Criminal Appeals. The Director has filed a response in opposition to the motion (Dkt. #32). Mr. Granger has filed a reply (Dkt. #33).

## Factual Background

The Texas Court of Criminal Appeals discussed the factual background of the case as follows:

> In April 2013, a jury convicted [Mr. Granger] of the capital murder of Minnie Ray Seboldt. *See* Tex. Penal Code Ann. § 19.03(a)(2). The State theorized that [Mr. Granger] caused Seboldt's death on March 14, 2012, while he was retaliating against and intending to kill Claudia Jackson for her service as a witness.
>
> The record shows that, at the time of Seboldt's death, [Mr. Granger] was on trial for sexual assault of a child - his then-twenty-year-old brain-damaged and learning-disabled daughter, Samantha Jackson. Samantha and her mother, Claudia Jackson, had testified against [Mr. Granger] on Tuesday, March 13, 2012. Samantha's cross-examination was to begin when trial resumed at 1 p.m. on Wednesday, March 14, and Rebecca Richard, [Mr. Granger's] estranged wife, was under subpoena to testify.
>
> [Mr. Granger] arrived at the courthouse several hours early on Wednesday and parked his truck in a lot across the street. He periodically opened the truck's door and looked over it toward the street in front of the courthouse. When Samantha, Claudia, and Richard arrived and began walking toward the courthouse, [Mr. Granger] approached and began shooting at them with a semi-automatic rifle.

Richard fled toward the parking lot and was not hit. Samantha, however, froze in place when the shooting began. [Mr. Granger] shot her multiple times and also ran over her with his truck before fleeing the scene. Nonetheless, Samantha survived. Claudia, who also survived the attack, was shot in the buttocks as she ran toward the courthouse. As she approached the courthouse, Claudia saw a bystander, later identified as Seboldt, lying on the ground in front of the courthouse doors. Sebolt suffered multiple gunshot wounds and died at the scene. Leslie King, another bystander who was in front of the courthouse, saw [Mr. Granger] turn his gun in her direction. King was wounded in the little finger as she heard bullets going past her.

Law enforcement officers shot and wounded [Mr. Granger] as he returned to his truck. [Mr. Granger] fled a short distance, then abandoned his vehicle and took hostages at a nearby business. He made a number of statements in which he incriminated himself as the shooter and blamed Samantha, Claudia, and Richard for his actions. Law enforcement officers took [Mr. Granger] into custody after his hostages overpowered him.

*Granger v. State*, 2017 WL 3379285 at *1.

## Motion to Stay and Hold in Abeyance

Mr. Granger acknowledges that the following claims have not been exhausted:

• **Claim I**: Trial counsel's conflicting loyalties actually affected their performance at both phases of trial, and the cumulative effect of their deficient performance prejudiced the defense at both phases of trial, depriving Mr. Granger of his Sixth Amendment rights.

• **Claim II**: Trial counsel's performance during voir dire deprived Mr. Granger of the effective assistance of counsel.

• **Claim III**: Trial counsel's failure to raise an equal protection challenge to the prosecutor's racially disproportionate exercise of peremptory challenges deprived Mr. Granger of the effective assistance of counsel.

• **Claim IV**: Trial counsel's employment of the court's competency expert as an expert for the penalty-phase defense deprived Mr. Granger of due process of law, and counsel's failure to obtain an independent expert, or to consult with and prepare his appointed expert before presenting his testimony, deprived Mr. Granger of the effective assistance of counsel.

• **Claim V**: Trial counsel were ineffective for hiring as their lead investigator the father of a witness for the prosecution.

- **Claim VI**: Trial counsel's failure to investigate, prepare, and present readily available, powerful mental health evidence deprived Mr. Granger of the effective assistance of counsel.

- **Claim VIII**: Mr. Granger was denied his Sixth Amendment right to effective assistance of counsel at the penalty phase of trial as a result of counsel's failure to adequately investigate and prepare witnesses and through presentation of overtly harmful evidence.

- **Claim X**: Mr. Granger's right to due process was infringed by improper prosecutorial argument at penalty-phase summation, and his right to the effective assistance of counsel was infringed by the failure of trial counsel to object.

- **Claim XI**: Mr. Granger was denied his Sixth Amendment rights to effective assistance of counsel and a fair trial as a result of trial counsel's failure to investigate, prepare, and present a coherent guilt-phase defense; counsel's introduction of overtly harmful evidence; and counsel's failure to object to irrelevant and overly prejudicial evidence and argument.

- **Claim XII**: Mr. Granger was denied effective assistance of counsel and a fair trial and sentencing as a result of counsel's handling of the ballistics evidence, including presentation of harmful expert testimony and failure to object to the State's presentation of false testimony and overstated closing argument.

- **Claim XIX**: The trial court's instructions and the prosecutor's arguments limited the jury's ability to give effect to mitigating evidence, in violation of the Eighth and Fourteenth Amendments.

- **Claim XX**: The trial court erred in failing to instruct the jury that mitigating circumstances do not need to be proven beyond a reasonable doubt, violating Mr. Granger's Eighth and Fourteenth Amendment rights; trial counsel were ineffective for failing to move for a proper instruction or object to the instruction as given.

Mr. Granger argues a *Rhines* stay is proper to allow him to exhaust these claims in State court. The Supreme Court specified that if there is some equitable reason for a petitioner's failure to exhaust a non-frivolous claim and there is some conceivable way of exhausting the claim in state court, federal courts should respect the power of state courts to pass on the merits of that claim first by staying federal proceedings. *Rhines*, 544 U.S. at 277–78.

**Discussion**

The Supreme Court has held that a federal district court has the discretion to stay a petition to allow a petitioner to present unexhausted claims in a "mixed petition" to the state court. *Rhines*, 544 U.S. at 279. The Court held that "[b]ecause granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts . . .", district courts may stay and hold in abeyance habeas petitions only in limited circumstances. *Id.* at 277. When a petitioner brings an unexhausted claim in federal court, a stay and abeyance is appropriate when the district court finds that (1) there was "good cause" for the failure to exhaust the claim, (2) the claim is not plainly meritless, and (3) there is no indication that the failure was for purposes of delay. *Id.* at 277-78. *See also Hearn v. Thaler*, 669 F.3d 265, 268 (5th Cir.), *cert. denied*, 567 U.S. 954 (2012) (federal court granted a stay and abatement to permit petitioner to exhaust an *Atkins v. Virginia*, 536 U.S. 304 (2002), claim in state court in the first instance).

In the present case, with respect to the first prong, Mr. Granger asserts that state habeas counsel's failures in representing him, combined with questions about his competency, provide good cause to exhaust. Second, his presentation of his unexhausted claims to the State court will not be plainly meritless because, in the wake of *Trevino v. Texas*, 569 U.S. 413 (2013), several judges have indicated a willingness to permit State courts to entertain a successive habeas petition based on claims not raised in the initial petition due to ineffective assistance of counsel. Third, neither Mr. Granger's failure to exhaust in his state habeas counsel nor his current motion were for purposes of delay.

The Court observes that the Texas Court of Criminal Appeals has long recognized that the ineffectiveness of state habeas counsel should not prevent a claim from being heard on the merits. *See, e.g., Ex parte Medina*, 361 S.W.3d 633, 642-643 (Tex. Crim. App. 2011) (per curiam); *Ex*

*parte McPherson*, 32 S.W.3d 860, 861 (Tex. Crim. App. 2000); *Ex parte Evans*, 964 S.W.2d 643, 647 (Tex. Crim. App. 1998). Moreover, the Texas Court of Criminal Appeals has allowed prisoners to reopen their habeas applications and raise defaulted claims. *See, e.g.*, *Ex parte Matamoros*, No. WR-50,791-02, 2011 WL 6241295 (Tex. Crim. App. Dec. 14, 2011) (per curiam); *Ex parte Moreno*, 245 S.W.3d 419, 420 (Tex. Crim. App. 2008). Consequently, the Fifth Circuit has accordingly observed, *Ex Parte Medina* "allowed a mulligan after finding it was not the client's fault that [state habeas counsel] had filed an incomplete application." *Hall v. Thaler*, 504 F. App'x 269, 284 (5th Cir. 2012). The Director, on the other hand, cites several decisions by the Fifth Circuit for the proposition that ineffective assistance of state habeas counsel does not constitute "good cause." *Williams v. Thaler*, 602 F.3d 291, 309 (5th Cir. 2010); *Hall v. Thaler*, 504 F. App'x 269, 284 (5th Cir. 2012).

*Rhines* stays have long been part of the routine practice of federal courts in Texas, with stays granted in dozens of cases. In cases arising after *Martinez v. Ryan*, 566 U.S. 1, 18 (2012), and *Trevino*, *Rhines* stays have taken on special importance, and the Fifth Circuit has stated that such stays are a proper way for district courts to handle the thorny post-*Martinez* and *Trevino* petitions raising unexhausted claims on account of state habeas counsel's performance. *See, e.g.*, *Neathery v. Stephens*, 746 F.3d 227, 229 (5th Cir. 2014); *Trevino v. Stephens*, 740 F.3d 378, 378 (5th Cir. 2014); *Rayford v. Stephens*, 552 F. App'x 367, 367 (5th Cir. 2014). It is further noted that in *Trevino*, the State, in fact, argued to the Supreme Court that "its courts should be permitted, in the first instance, to decide the merits of Trevino's ineffective-assistance-of-trial-counsel claim." *Trevino*, 569 U.S. at 429. The State's argument before the Supreme Court supports a conclusion that petitioners should be permitted to return to state court to exhaust *Martinez*/*Trevino* related claims. Mr. Granger should not be prevented from having his claims considered on the

merits because of ineffective assistance of state habeas counsel. Mr. Granger has shown "good cause" for being permitted to return to state court to exhaust his unexhausted.

With respect to the second prong in the *Rhines* analysis, Mr. Granger argues that his claims are not plainly meritless. The Director disagrees. In the Fifth Circuit, a claim is "plainly meritless" only if the court can certainly conclude that the claims are "now procedurally barred . . . in state court." *Neville v. Dretke*, 423 F.3d 474, 480 (5th Cir. 2005); *accord Haynes v. Quarterman*, 526 F.3d 189, 197 (5th Cir. 2008); *Williams v. Thaler*, 602 F.3d 291, 309 (5th Cir. 2010). Furthermore, unless it is "entirely clear" that a state court will apply a procedural bar, the "State" - not this Court - "should be allowed to make the procedural, *vel non*, determination." *Wilder v. Cockrell*, 274 F.3d 255, 262 (5th Cir. 2001). Several members of the Texas Court of Criminal Appeals have indicated a desire to reconsider the State's procedural rules in light of *Trevino*. Mr. Granger persuasively argues that the court should not assume that his case is futile just because, prior to *Trevino*, Texas generally prohibited the filing of successive habeas applications. *Cf. Neville*, 423 F.3d at 480. Mr. Granger's claims have arguable merit. They are not plainly meritless; thus, the State should be allowed to make the initial determination.

With respect to the third prong in the *Rhines* analysis, Mr. Granger asserts that he has not engaged in intentional dilatory tactics. His failure to exhaust these claims was the result of state habeas counsel's failure to investigate adequately and plead all meritorious claims. He asserts that he filed the present motion only shortly after counsel completed their investigation and filed the amended petition for a writ of habeas corpus.

Mr. Granger has satisfied all three *Rhines* prongs in order for this court to stay and and hold the proceedings in abeyance. The case should be stayed to give the Texas Court of Criminal Appeals the first opportunity to consider his unexhausted claims. It is therefore

**ORDERED** that Mr. Granger's Motion to Stay and Hold in Abeyance the Federal Habeas Proceeding (Dkt. #22) is **GRANTED**. The above-styled and numbered petition for a writ of habeas corpus is **STAYED** and the case is **ADMINISTRATIVELY CLOSED** while Mr. Granger pursues his remedies in State court. Mr. Granger has 45 days from the entry of this order to initiate proceedings in State court. He is to submit a status report of the State court proceedings every six months from the entry of this order. Mr. Granger has 45 days from the date the Texas Court of Criminal Appeals issues a decision on his State application to ask that the stay be lifted and the case be returned to the active docket. Mr. Granger is placed on notice that the petition may be dismissed if the Court does not hear from him every six months from the entry of this order.

**SIGNED this the 23rd day of September, 2019.**

_____
KEITH F. GIBLIN
UNITED STATES MAGISTRATE JUDGE